# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1134

ROBERT L. HOLBROOK,

*Plaintiff-Appellant,*

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Indiana, South Bend Division.
No. 3:02 CV 0439 RM—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED SEPTEMBER 24, 2004—DECIDED JULY 8, 2005

———————

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS,
*Circuit Judges.*

WILLIAMS, *Circuit Judge.* Plaintiff Robert L. Holbrook
sued his employer, defendant Norfolk Southern Railway
Company, under the Federal Employers' Liability Act
(FELA) for damages he suffered on the job. In this appeal,
he challenges the district court's grant of summary judg-
ment in Norfolk Southern's favor, and its decision to strike
several photographs, but we find that he failed to establish
that Norfolk Southern knew of the dangerous condition that
caused his injury, and that a sufficient foundation was not

laid for the contested photos. We therefore affirm both determinations of the district court.

## I. BACKGROUND

Holbrook has worked for Norfolk Southern since October 10, 1967. Since 1981, he has worked as a road conductor, primarily assigned to take trains on runs between Elkhart, Indiana, and Chicago, Illinois. On December 23, 2001, Holbrook was preparing a freight train for departure from Norfolk Southern's Elkhart Yard by coupling air hoses and climbing on rail car ladders to release hand brakes. This work required him to occasionally step between the rails of the tracks, which that day were covered by snow. As he was working on one car, he swung his left foot around and placed it on the bottom rung of a ladder attached to the side of the car. His foot slipped, causing him to fall and suffer an injury to his knee. While on the ground, he noticed a sticky, oily substance on the rung, which he wiped off with a paper towel. While Holbrook does not know whether the substance was on the ladder before he came to it or tracked onto it from somewhere else, he claims that it could only have come from the Elkhart Yard because he only wears his work boots (the shoes that he was wearing at the time of the slip) when he is at work.

Holbrook brought this cause of action against Norfolk Southern pursuant to the FELA, 45 U.S.C. §§ 51 *et seq.*, alleging that while in the course of performing his duties, he was caused to slip due to a hazardous accumulation of oil and thereby injured. The district court granted summary judgment in favor of Norfolk Southern, finding that Holbrook failed to establish that his injury was caused by a dangerous condition of which the defendant had notice. The lower court also granted the railroad's motion to strike photographs attached to the affidavit of one of Holbrook's

witnesses (Steven Filbert) that purported to depict accumulations of oil in various parts of the Elkhart Yard. Holbrook appeals.

## II. ANALYSIS

### A. Summary Judgment Properly Granted on FELA Claim

The FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. In so providing, "the FELA imposes on railroads a general duty to provide a safe workplace." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996) (citing *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992)). Because it is meant to offer broad remedial relief to railroad workers, a plaintiff's burden when suing under the FELA is significantly lighter than in an ordinary negligence case. *Lisek v. Norfolk & Western Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994); *Harbin v. Burlington Northern R.R.*, 921 F.2d 129, 131 (7th Cir. 1990). Indeed, a railroad will be held liable where "employer negligence played any part, even the slightest, in producing the injury." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). With this lighter burden of proof, a plaintiff can more easily survive a motion for summary judgment. *Lisek*, 30 F.3d at 832.

The FELA does not, however, render a railroad an insurer of its employees. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994); *Milom v. New York Cent. R.R. Co.*, 248 F.2d 52, 55 (7th Cir. 1957). Thus, a plaintiff must proffer some evidence of the defendant's negligence in order to survive summary judgment. *Lisek*, 30 F.3d at 832 (citing *Deutsch v.*

*Burlington Northern R.R. Co.*, 983 F.2d 741, 744 (7th Cir. 1993)). In particular, "[t]o establish that a railroad breached its duty to provide a safe workplace, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm." *McGinn*, 102 F.3d at 300. To establish such foreseeability, a plaintiff must show that the employer had actual or constructive notice of those harmful circumstances. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1063 (7th Cir. 1998) ("[A] FELA plaintiff injured by a defective condition cannot recover damages without showing that the employer had actual or constructive notice of the condition.").

Here, the dangerous condition of which Norfolk Southern must have had notice in order to be liable is the tiny dab of grease—or its origins—that gave rise to Holbrook's fall. What we know from the evidence is that the dab somehow ended up on the ladder, and that Holbrook slipped because of it. But the evidence cannot confirm from where this greasy substance came. This does not end our inquiry or doom Holbrook's claim, however, for once we accept that the greasy substance was on the ladder at the time of his fall, we are left with only two possibilities as to how it got there: either Holbrook tracked it onto the ladder himself, or the substance was on the ladder before he stepped on it. Though Holbrook cannot say which scenario was in fact the case, he argues that, in either event, Norfolk Southern would have had notice of the condition.

### 1. Actual Notice Not Established

In the event that the grease was tracked onto the ladder by his boots, Holbrook argues that the substance came from conditions of which Norfolk Southern had *actual* notice—namely, pools of oil that had accumulated between the tracks throughout the Elkhart Yard. There is evidence that such pools existed, at least at some point in time, and that

Norfolk Southern was aware of them. In particular, Holbrook points to annual safety inspection reports filed year after year with Norfolk Southern by Steven Filbert—a Norfolk employee and Union representative—detailing safety concerns posed by such accumulations of grease and oil in the Yard, including the general area where he was injured (the West End of track 5W). Though he cannot say whether he stepped in any accumulation of oil on the day of the accident, he has testified that he stepped in between the tracks where such oil might be found several times in the course of his duties. Furthermore, through the affidavits of Filbert, Raymond Duffany (a railroad engineering expert), and Jay P. Geary (the assistant terminal superintendent of the Elkhart Yard), Holbrook proffered evidence suggesting that, despite its knowledge of the dangerous conditions, Norfolk Southern did nothing to prevent them.

Even assuming that such pools of oil did accumulate at various times throughout the life of the Elkhart Yard and that Norfolk Southern did in fact have notice of them, such assumptions alone would still fall short of sustaining Holbrook's claim. Rather, to succeed, Holbrook must not only identify a dangerous condition of which the defendant was aware, but also connect that known condition to his injury. Indeed, Norfolk Southern's notice of accumulated oil pools would be wholly irrelevant to Holbrook's claim absent a showing that such known conditions in fact caused his injury. Thus, in order to connect his injury to the known condition, two further assumptions would be required: that an accumulated oil pool was present *on the day* Holbrook was injured, and that Holbrook in fact stepped in that pool—or at least in its vicinity—before mounting the ladder. Unwilling at the summary judgment stage to make these further assumptions, the district court rejected Holbrook's claim, finding no evidence tying his injury (or, more precisely, the dab of grease that caused it) to those conditions of which the defendant had actual knowledge.

Holbrook, however, insists that by requiring him to tie his injury to those known conditions, the district court improperly made it his burden to show *definitively* that the known condition caused his injury. He argues that, instead, his burden is merely to establish a *reasonable inference* that those known dangerous conditions *played a part* in his injury. In support of his position, he directs us to *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108 (1963). In *Gallick*, the defendant railroad permitted a pool of stagnant water to accumulate on its property, attracting a variety of insects. *Id.* at 109. While in the vicinity of the pool, the plaintiff (Gallick) was bitten by an insect, causing an injury that ultimately led to the amputation of his leg. *Id.* Gallick in turn brought a FELA claim against the railroad and secured a jury verdict in his favor. *Id.* at 112. An appellate court, however, overturned that verdict, finding that the absence of direct evidence definitively connecting the infectious insect to the stagnate pool on the railroad's premises—as opposed to the nearby putrid mouth of the Cuyahoga River or other unsanitary places located on properties neither owned nor controlled by the defendant—left the plaintiff's case unfit for a jury. *Id.*

The Supreme Court disagreed, finding that the plaintiff had presented an appropriate jury question—notwithstanding the other possible sources of the deleterious bug—by raising a reasonable inference that the fetid pool played a part in his injury:

> Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry *whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury* or death. . . . [I]f that test is met, [judges] are bound to find that a case for the jury is made out *whether or not the evidence allows the jury a choice of other probabilities.*

*Gallick*, 372 U.S. at 116-17 (quoting *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506-07 (1957)) (emphasis added). With Gallick's case properly before it, the jury could go on to find that his injury was reasonably foreseeable, for it was within the province of the jury to conclude that the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area," and thus "should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." *Id.* at 118-19. Thus, under *Gallick*, if it would be reasonable to conclude that the negligence of an employer played any part in a plaintiff's injury, then a question of employer negligence fit for a jury is presented under the FELA, regardless of the existence of other probable causes.

Relying on *Gallick*, Holbrook insists that his case is also fit to reach a jury, arguing that his evidence is sufficient at least to establish a reasonable inference that the known accumulated oil pools played a part in causing his injury. There are parallels between *Gallick* and the case at bar. In both cases, the plaintiffs could definitively identify the harmful agent that caused their injuries—in *Gallick*, an infectious insect, here a dab of grease—but not its source. Indeed, in both cases the plaintiffs could do no better than suggest a list of probable sources, both of which included known dangerous conditions on their respective employers' premises—in *Gallick*, a stagnant cesspool, here accumulated pools of oil.

But the parallels end here, for while Gallick's evidence could place the agent that caused his injury within the temporal and physical vicinity of the dangerous condition of which his employer knew, Holbrook's evidence cannot. In *Gallick*, no one disputed the very presence of the fetid pool, or the plaintiff's proximity to it at the time he was bitten by the insect. Gallick had been bitten by the insect within two seconds after walking away from the stagnant pool. Such temporal and physical proximity to the known hazard

rendered reasonable the inference that the condition played a part in Gallick's injury. Surely, if Gallick had not been able to establish the existence of a cesspool on his employer's premises or his presence near it at the time he was bitten by the insect, no reasonable inference could be drawn that that cesspool might have played a part in his injury.

In contrast, here Holbrook is not only uncertain whether he stepped in oil that day, but also, due to snow-cover across the Yard, unable to say whether there was even any oil on the ground for him to step into. Holbrook simply offers no evidence that he was in the vicinity of an accumulated oil pool on the day of the accident, or that any such accumulation even then existed. Because the plaintiff cannot place himself within the temporal or physical vicinity of the proffered, known dangerous condition, let alone establish that condition's very existence on the day of the incident, it would not be reasonable to infer that putative pools of accumulated oil in the Elkhart Yard played a part in Holbrook's injury. Thus, Holbrook has failed to establish that Norfolk Southern had actual notice of the conditions that caused his injury.

### 2. Constructive Notice Not Established

Alternatively, Holbrook argues that, in the event that the grease was already on the ladder before he came to it, Norfolk had *constructive* notice of that condition because company procedure dictates pre-departure inspection of the cars by railroad employees, and no one other than the inspectors work with those cars before they come to Holbrook for prep-work. Thus, according to the plaintiff, if the grease was on the ladder before he came to it, the inspectors should have discovered it.

However, there is absolutely no evidence that the grease was on the ladder before Holbrook stepped on it. And even assuming that the grease was on the ladder before Holbrook

stepped on it, there are a myriad of possible ways the substance could have gotten onto the ladder between the railcar's inspection and its contact with Holbrook (*e.g.*, splatter from a passing train on adjacent tracks, residue from mounting by another employee). Holbrook himself conceded that, if the dab of grease was on the ladder before he stepped on it, it could have attached sometime after the car's inspection. Because plaintiff's constructive notice argument "rests on mere speculation and conjecture," it too must fail. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) (affirming grant of summary judgment against FELA plaintiff where plaintiff "introduced no evidence to show that an earlier inspection would have revealed or cured the [defective condition], or that the railroad had notice of the defect prior to the accident").

We briefly address, and for similar reasons reject, Holbrook's contention that notice is not even necessary to establish his FELA claim. Here, he argues that if Norfolk Southern is found, in its failure to clean up, to have created the dangerous condition itself, *see Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999), or to have failed to provide a safe place to work, *see Harp v. Illinois Cent. Gulf R.R. Co.*, 370 N.E.2d 826, 828 (Ill. App. Ct. 1977), then he need not establish notice. Toward that end, Holbrook contends that the Yard was in Norfolk Southern's exclusive control and its inaction in the face of numerous complaints regarding the accumulation of oil throughout the Yard would constitute active negligence. However, these cases are inapposite to the case at bar, as there the hazards created by the defendants' action or inaction were the clear cause of the plaintiffs' injuries. Whether Norfolk Southern responded to the complaints it received regarding the accumulated pools of oil remains irrelevant because, again, Holbrook has no evidence that the accumulations of which the defendant had notice had anything to do with his mishap.

As Holbrook is unable to establish that Norfolk Southern had actual or constructive notice of the condition that caused his injury, we agree with the district court that his FELA claim must fail, and therefore affirm the lower court's grant of summary judgment in defendant's favor. Accordingly, we need not reach the parties' arguments regarding Judge Hand's algebraic formula for negligence from *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947).

## B.  District Court Did Not Abuse Discretion in Striking Photographs

We next address the district court's decision to strike the photographs of unspecified portions of the Elkhart Yard—photos which purport to provide "visual proof" that pools of oil had accumulated between the tracks throughout that Yard. We review the trial judge's decision to strike these photos, which were attached to the affidavit of Steven Filbert, for an abuse of discretion. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001). "[D]ecisions 'that are reasonable, *i.e.*, not arbitrary, will not be questioned.'" *Id.* (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998)).

The district court struck the photos because it found them irrelevant. Federal Rule of Evidence 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to the district judge, Filbert's photos failed to meet the Rule 401 standard because they were undated and neither the photos nor Filbert's affidavit specified what part of the Yard they depicted. In the absence of such foundation, the district court reasoned, Holbrook could not foreclose the possibility that these pictures depict a time and a place wholly irrelevant to the case at bar.

The district court here got it only half right, but, in this case, that is enough to sustain its ruling. Contrary to the district judge's finding, Filbert's affidavit sufficiently dated the photos by indicating that they were taken prior to Holbrook's accident. Filbert states in his affidavit that the "oil shown in these photographs shows some of the hazardous conditions that existed in this area *for a number of years and before Mr. Holbrook's accident.*" (emphasis added). So dated, the pictures could tend to establish that Norfolk Southern—despite its assertions to the contrary—did have notice of dangerous conditions created by accumulated oil and grease on its own property prior to Holbrook's accident. What dooms the photos, however, is the absence of foundation evidence suggesting that the conditions of the tracks at the time of Holbrook's alleged mishap were in the same, or even similar, condition as depicted in the photographs. The district court noted that neither Filbert nor Holbrook could say whether any of the proffered photos captured the particular location where Holbrook suffered his fall, or an accumulated pool of oil that may be blamed for causing it. Nor, the district judge reasoned, was there any proof that Holbrook ever walked in or near the location depicted in the photos. Whether or not we think the district court's decision to strike the pictures was wrong, we cannot say that it was unreasonable. The district court did not abuse its discretion in granting defendant's motion to strike the photographs.

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's decision to strike the photographs attached to Filbert's affidavit, and its grant of summary judgment in favor of Norfolk Southern.

A true Copy:

      Teste:

                      _____
                      *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*