■ JOSEPH D. ROBINSON, Respondent, v CSX TRANSPORTATION, Appellant. [838 NYS2d 203]—

Kane, J. Appeals (1) from an order of the Supreme Court (Doyle, J.), entered May 8, 2006 in Albany County, which denied defendant's motion to, inter alia, set aside the jury verdict, and (2) from a judgment of said court, entered June 7, 2006 in Albany County, upon a verdict rendered in favor of plaintiff.

On November 9, 1999, plaintiff, a conductor on defendant's railroad, boarded a train in the City of Buffalo, Erie County bound for Albany County. The train consisted of two engines and 90 cars carrying motor vehicles being shipped from the midwest to a destination in New Jersey. Plaintiff was part of a

two-person crew responsible for the Buffalo-to-Albany portion of the trip.

The train was ordered to side track the 90 cars in the Town of Savannah, Wayne County and to return the engines with a piece of equipment called an end of train device (hereinafter EOT) to the City of Syracuse, Onondaga County. An EOT is a radio-controlled device connected to the last car on a train. It monitors the air pressure in the brake system and applies emergency brakes when necessary, taking the place of a caboose and permitting the train to operate without a person in the last car to monitor the brakes. After side-tracking the train, plaintiff was injured while removing the EOT from the coupler on the last car of the train.

It is the obligation of a railroad employee, called a car man, to place the EOT on a train at the point of origin and at that time perform an inspection of the EOT to insure that it is functioning properly. Defendant concedes that at the time of plaintiff's accident, the EOT had two obvious defects. The air hose was cracked so badly that it would not maintain air pressure and a device called a glad hand latch was missing. The glad hand latch secures the air hose to the train and prevents the hose from becoming dislodged due to external forces. Should the brake system suddenly lose air pressure because of a break in the hose or the hose coming loose from the brake system, the emergency brakes of the entire train are engaged with the potential for a catastrophic derailment. In addition to these patent defects, plaintiff alleges that there was a latent defect with a latch that secures the EOT to the train and that this defect would have been discovered upon proper inspection when the EOT was placed on the train. It was this latch defect which plaintiff alleges caused his injuries when the EOT fell off the train to the ground as plaintiff was removing it.

Although plaintiff had never received specific training on how to remove an EOT, and defendant used more than one type of EOT, plaintiff had removed 50 or 60 EOTs prior to his injury. The normal process for removing an EOT is to relieve the air pressure in the hoses between the EOT and the train, unwind the worm gear, which causes the EOT to drop down 1 to 1½ inches, wiggle or twist the EOT slightly, then lift the EOT off the train. On the day in question, the EOT did not drop down after plaintiff unwound the worm gear, contrary to plaintiff's prior experience with the device. When plaintiff attempted to twist the EOT loose, the EOT fell off the train and to the ground, causing his injury. His shoulder injury was aggravated

when he was then required to operate faulty hand brakes on several train cars at the same site.*

Plaintiff commenced this personal injury action pursuant to the Federal Employers' Liability Act (45 USC § 51 *et seq.* [hereinafter FELA]). After trial, the jury found for plaintiff and awarded him damages totaling $4.7 million. Supreme Court denied defendant's motion to set aside the verdict or order a new trial. Defendant appeals from the order denying that motion and from the judgment entered on the verdict.

Defendant contends that the evidence does not support the jury's findings on causation and forseeability of plaintiff's injury as a consequence of defendant's negligence. Although the basic elements of a negligence cause of action are the same, the standard for determining negligence in FELA cases is significantly more liberal than the standard in common-law negligence cases (*see Holbrook v Norfolk S. Ry. Co.*, 414 F3d 739, 741-742 [7th Cir 2005]; *Swartout v Consolidated Rail Corp.*, 294 AD2d 785, 786 [2002]). While the mere occurrence of an injury is not enough to establish liability and employer negligence must still be proven (*see Nivens v St. Louis Southwestern Ry. Co.*, 425 F2d 114, 118 [5th Cir 1970], *cert denied* 400 US 879 [1970]), the test in FELA cases "is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought" (*Rogers v Missouri Pacific R. Co.*, 352 US 500, 506 [1957]; *see Hotaling v CSX Transp.*, 5 AD3d 964, 967 [2004]). This relaxed burden of proof applies to the issues of breach of duty as well as causation (*see Williams v Long Is. R.R. Co.*, 196 F3d 402, 406 [2d Cir 1999]). The jury's right to pass on all factual issues is liberally construed under FELA, permitting the jury to determine the case when there is proof, even if entirely circumstantial, from which reasonable persons could make the inference that the employer's negligence "played any part, however small," in the plaintiff's injury (*Rogers v Missouri Pacific R. Co.*, supra at 508; *see Syverson v Consolidated Rail Corp.*, 19 F3d 824, 826 [2d Cir 1994]).

Plaintiff presented evidence which would permit a jury to find that defendant's negligence played some part in his injury. Several of defendant's employees testified that defendant used different types of EOTs but did not train them to remove EOTs, regardless of the type. Defendant's employee who inspected the

---

* The jury found that defendant violated the Federal Safety Appliance Act (49 USC § 20301 *et seq.*) by failing to provide efficient hand brakes, with 10% of plaintiff's injuries attributable to this violation. Defendant is not contesting the verdict as it relates to the hand brakes.

EOT involved in this incident, who was employed as a radio maintainer, testified that the EOT should not have been placed on any train due to its defective conditions, namely the cracked air hose and missing glad hand latch. Although these defects were quite serious, neither caused plaintiff's injury. Nevertheless, these defects are some proof that defendant failed to properly maintain and inspect the EOT, and that had defendant's employees properly inspected the device when it was placed on the train, they would have discovered the defect responsible for plaintiff's injury.

Plaintiff's expert, who did not inspect the EOT himself, testified that the EOT would not have fallen off the train as it did unless a defect existed at the time the EOT was placed on the train. Plaintiff's expert identified a nut and bolt mechanism as the site of the defect. Plaintiff, as well as other witnesses, testified that, in hundreds of removals by them, an EOT had never malfunctioned in the manner described by plaintiff. This testimony demonstrated that any one of the defects noted by plaintiff's expert could have caused the EOT to detach abnormally, permitting the jury to conclude that defendant was negligent in permitting a defective EOT to be placed on the train assigned to plaintiff. On the other hand, defendant's employee who performed the postincident inspection had never inspected an EOT following an unusual incident, had never mounted or removed an EOT from a train, did not take the EOT entirely apart in conducting his inspection, did not even mention in his inspection report the defective parts of the EOT responsible for plaintiff's injury, and could not produce either the tag attached to the EOT ordering the inspection of the device or the first of two reports he prepared. These deficiencies could well have prompted the jury to reject his opinion concerning the latch defect and allowed it to draw a negative inference against defendant. Thus, the evidence was sufficient for the jury to find that the EOT was defective and that the defect was the proximate cause of plaintiff's injury.

Defendant further argues that plaintiff's accident and injuries were not foreseeable. As with negligence generally, the issue of foreseeability is subject to a liberal standard in FELA cases (*see Ulfik v Metro-North Commuter R.R.*, 77 F3d 54, 58 n 1 [2d Cir 1996]; *Swartout v Consolidated Rail Corp.*, 294 AD2d 785, 787 [2002], *supra*). The concept of foreseeability does not require that defendant could foresee exactly how plaintiff was injured, but rather that the condition posed a risk of harm (*compare Gallick v Baltimore & Ohio R. Co.*, 372 US 108, 118-120 [1963]; *Ulfik v Metro-North Commuter R.R.*, *supra* at 58-59; *Long v*

*CSX Transp., Inc.*, 849 F Supp 594, 596-597 [SD Ohio 1993]). Given the manner in which the EOT device malfunctioned and the defects as testified to by plaintiff's expert, it was foreseeable that an individual unhooking this device from a coupler was exposed to a risk of harm by the EOT falling unexpectedly.

Finally, although plaintiff could not prove actual notice of the defect, he did prove constructive notice. The jury could conclude from the evidence that the air hose on the EOT was in such a dangerous condition when placed on the train that the EOT should have been removed and the entire device subjected to a thorough inspection. Given the nature of the defects testified to by plaintiff's expert, coupled with his stated opinion and the generally deteriorated condition of the device, the jury could conclude that the defect which caused plaintiff's injury existed when the EOT was placed on the train.

As the proof in this case was sufficient to establish notice, defect, causation and foreseeability, the jury verdict is supported by the evidence and Supreme Court properly denied defendant's motion to set aside the verdict (*see Tennant v Peoria & Pekin Union R. Co.*, 321 US 29, 35 [1944]).

Mercure, J.P., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the order and judgment are affirmed, with costs.