In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-2437

MARTIN JARANOWSKI,

*Plaintiff-Appellant,*

*v.*

INDIANA HARBOR BELT RAILROAD COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:20-cv-00484-APR — **Andrew P. Rodovich**, *Magistrate Judge.*

ARGUED JANUARY 18, 2023 — DECIDED JULY 5, 2023

Before HAMILTON, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff-appellant Martin Jaranowski worked as a conductor for defendant-appellee Indiana Harbor Belt Railroad Company for twenty-two years. While operating a railroad switch in October 2020, plaintiff seriously injured his neck. He sued the railroad under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., alleging that he was injured because the railroad failed to

maintain the switch properly. He accused the railroad of ordinary negligence and negligence per se based on alleged violations of Federal Railroad Administration (FRA) Track Safety Standards. See 49 C.F.R. Part 213.

The district court concluded that Jaranowski had failed to present evidence that would support a finding that the railroad had actual or constructive notice of any defect in the switch before plaintiff was injured. The court granted summary judgment to the railroad on Jaranowski's claim for ordinary negligence and his claim for negligence per se, finding that the federal Track Safety Standards are violated only when a railroad has actual or constructive notice of track defects. We reverse. We agree with the district court that actual or constructive notice is required to violate the federal Track Safety Standards. We also find, however, that plaintiff presented sufficient evidence to create a genuine dispute as to whether the railroad at least should have known that the switch was defective before plaintiff was injured.

I.   *Factual and Procedural History*

   A.  *Facts Relevant to Summary Judgment*

Plaintiff Jaranowski was employed as a conductor at Indiana Harbor Belt Railroad's Michigan Avenue Yard in East Chicago, Indiana. His duties included operating or "throwing" manually operated railroad switches. On October 26, 2020, while moving switch MA 27 from left to right, Jaranowski felt unexpected resistance in the switch followed by a strong pain in his neck and arm and tingling in his fingers. He was diagnosed with a spinal cord injury, and two months later, he underwent neck surgery. Jaranowski's injury

left him permanently unable to lift more than 20 pounds or to perform overhead work.

At the heart of a railroad switch is a lever about three feet long. By moving this lever, the operator is able to move short lengths of rail, which switch trains from one track to another. Switch MA 27 has such a lever with a handle at the end. The lever rests in a "switch keeper" when the switch is in a fixed and latched position. To operate the switch, the conductor disengages the latch with his foot, which releases tension and causes the lever to rise a few inches. Applying steady force, the conductor then walks the switch over to the opposite side and engages the latch to keep the switch in a fixed position. As the operator walks the switch from one side to the other, "switch points" in the rails are shifted into the desired position to switch trains from one track to another.

The railroad has a qualified track inspector inspect switch MA 27 monthly, as federal regulations require. See 49 C.F.R. § 213.235. Switch MA 27 was inspected on October 15, 2020, eleven days before Jaranowski was injured. The inspection report for that date noted no defect. Previous inspection reports of MA 27, going back to April 30, 2019, likewise showed no defect or issue with the switch. Jaranowski himself operated MA 27 without incident on October 22, four days before he was injured. Before throwing the switch on October 26, 2020, he looked at the switch points and saw no large debris in the points.

The day Jaranowski was injured, the railroad's director of safety, Eric Ritter, inspected switch MA 27. Ritter found that the switch was in good working condition, but his report noted that the amount of force required to operate the switch lessened substantially after he lubricated the switch as part of

his inspection. Pushing the handle down, for example, required 126 pounds of force before lubrication but only 55 pounds of force afterwards.

Plaintiff retained Alan Blackwell, a qualified track inspector, as an expert witness. Blackwell submitted a report and testified by affidavit in opposition to the railroad's motion for summary judgment. Blackwell identified several possible causes of Jaranowski's injury. He noted that photographs of switch MA 27 taken by the railroad shortly after plaintiff's injury show debris, dirt, mud, ballast, and vegetation in the "tie cribs," which is where the connecting rod and switch rods are located. According to Blackwell, debris and vegetation in this location can interfere with the operation of the switch. The railroad's Ritter agreed that debris in the tie crib could affect the switch, and he testified that if he were to see a switch in the condition depicted in the photographs, he would order his crew to clean it up. Blackwell also noted that the photographs showed that the switch points were skewed and that fastenings that should keep the switch components in place were missing.

Blackwell personally inspected switch MA 27 on July 16, 2021, nine months after Jaranowski's injury. The day before his scheduled inspection, three maintenance workers for the railroad spent roughly 40 minutes cleaning and maintaining the switch. Ritter later explained that the railroad's crew knew the switch was going to be inspected and that they wanted to make sure it was in "good order." During his inspection, Blackwell noted that the switch appeared to have been recently lubricated and that there was no debris or vegetation in the tie cribs. Yet even after the clean-up and maintenance, and consistent with photographs taken after Jaranowski was

injured, Blackwell observed that the switch points were skewed and that several fastenings were loose or missing.

Blackwell also found excessive "lost motion" when the switch was moved from left to right, the same direction Jaranowski moved the switch when he was injured. "Lost motion" refers to a lag between movement of the switch handle and movement of the switch points in the rails. With lost motion, when the operator walks the switch handle from one side to the other, the switch points do not move right away. During his inspection, Blackwell discovered that the switch points on MA 27 did not move during the first half of the handle's journey. The switch points started to move only when the handle was at roughly a 90-degree angle. They completed their entire movement during the second half of the handle's journey. Blackwell explained that when switches are not properly maintained, they become difficult to operate, which means that the conductor must apply additional force to throw the switch, which in turn can lead to musculoskeletal injuries.

Blackwell concluded that the railroad had failed to provide a safe place for Jaranowski to work. He found that the railroad had failed to maintain switch MA 27 properly so that it could be operated without undue force and excessive lost motion. He also concluded that the railroad had failed to remove debris and vegetation from the tie cribs and that it failed to ensure fastenings were in place and secure. Blackwell further opined that the railroad had failed to perform detailed, monthly inspections "in a manner that ensured the switch was safe for operation." Finally, he concluded that the railroad had violated several federal Track Safety Standards.

B.  *Proceedings in the District Court*

Jaranowski sued Indiana Harbor Belt Railroad under the FELA, alleging that the railroad's negligence caused his injury. He accused the railroad of ordinary negligence and of negligence per se for its alleged violations of the federal Track Safety Standards.

The railroad moved for summary judgment, arguing that Jaranowski could not establish that the railroad had actual or constructive notice of any defect in switch MA 27. Under 28 U.S.C. § 636(c), the parties consented to adjudication by a magistrate judge, who first granted the railroad's motion in part and denied it in part. *Jaranowski v. Indiana Harbor Belt R.R. Co.*, No. 2:20-cv-484, 2022 WL 2065022, at *1 (N.D. Ind. June 8, 2022). In that decision, the magistrate judge found that Jaranowski had not shown a genuine dispute of fact as to whether the railroad had actual or constructive notice that the switch was defective. The judge therefore concluded that the railroad was entitled to summary judgment on Jaranowski's claim of ordinary negligence. *Id.* at *4. Because the railroad's opening brief on summary judgment had not addressed Jaranowski's claim of negligence per se, the court took no action on that claim. *Id.* at *1 & n.2, and *4.

The railroad then moved for reconsideration of the district court's order. It argued that the federal Track Safety Standards are violated only when the railroad has actual or constructive notice of the violation. Because the court had already determined that Jaranowski could not establish that the railroad had such notice that MA 27 was defective, the railroad argued that it was also entitled to summary judgment on the claim for negligence per se. The magistrate judge agreed that notice is required to violate the federal Track Safety

Standards, and he granted summary judgment to the railroad on Jaranowski's remaining claim and entered final judgment for the railroad. *Jaranowski v. Indiana Harbor Belt R.R. Co.*, No. 2:20-cv-484, 2022 WL 3042236, at *3 (N.D. Ind. Aug. 2, 2022). Jaranowski has appealed on both claims.

II. *Analysis*

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in Jaranowski's favor. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572 (7th Cir. 2021). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines which facts are material. *Id.*

Jaranowski makes two arguments on appeal. First, he argues that the evidence establishes a genuine dispute as to whether the railroad had actual or constructive notice that switch MA 27 was defective. Second, he contends that notice of a purported defect is not necessary to establish a violation of the federal Track Safety Standards that would establish negligence per se.

A. *Genuine Dispute as to Notice*

The FELA provides: "Every common carrier by railroad … shall be liable in damages to any person suffering injury while he is employed … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or

employees of such carrier." 45 U.S.C. § 51. To prevail on his FELA claim, the plaintiff must prove "the traditional common law elements of negligence, including foreseeability, duty, breach, and causation." *Abernathy v. Eastern Illinois R.R. Co.*, 940 F.3d 982, 988 (7th Cir. 2019), quoting *Fulk v. Illinois Central R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). To establish that his injury was foreseeable, the plaintiff "must show that the employer had actual or constructive notice" of the conditions he alleges were dangerous. *Holbrook v. Norfolk Southern Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005).

Because the Act was written "to offer broad remedial relief to railroad workers," the plaintiff's burden under the FELA is "significantly lighter than in an ordinary negligence case." *Holbrook*, 414 F.3d at 741–42. Under the FELA, "a railroad will be held liable where 'employer negligence played any part, even the slightest, in producing the injury.'" *Id.* at 742, quoting *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957). Consequently, "a trial judge must submit an FELA case to the jury when there is even slight evidence of negligence." *Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990).

Viewed through the summary judgment lens, plaintiff's evidence would allow a reasonable jury to find that the railroad at least should have known that switch MA 27 was defective in one or more ways before plaintiff was injured. First, Blackwell, a certified track inspector with decades of experience, studied photographs of the switch taken soon after Jaranowski was injured and concluded that vegetation and debris in the tie cribs could have interfered with the switch's operation. The photographs show two plants, each roughly the height of the rail, as well as several water bottles, a cup, and other debris in the tie cribs. The railroad's own safety

director testified that if he had seen the switch in the condition depicted in the photographs, he would have ordered a crew to clean it up.

The railroad argues, however, that even if the vegetation interfered with the switch's operation, there is no evidence that the railroad knew or should have known of its presence. The switch was inspected eleven days before Jaranowski was injured, and that inspection report indicated no defects in the switch. The parties draw different conclusions from this fact. The railroad asks us to take the inspection report at face value, inferring that the switch was actually in good condition on the date of inspection, so that any defect in the switch must have arisen in the eleven days between the inspection and plaintiff's injury. Plaintiff argues, however, that a jury could conclude that the vegetation shown in the photographs could not possibly have grown in just eleven days. He insists that the only reasonable explanation, and certainly one reasonable explanation, is that the railroad's October 15th inspection just missed the problems because it was not performed with reasonable care.

In deciding a motion for summary judgment, the court does "not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018), quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Our only task is to determine whether there is a genuine dispute of material fact requiring a trial. *Id.* We conclude that a reasonable jury could accept Jaranowski's account of the facts and conclude that the railroad's prior inspection was performed without due care.

The district court reasoned that vegetation in the tie cribs could not have provided notice to the railroad because, before operating the switch, Jaranowski checked to ensure that there was no large debris in the switch points. *Jaranowski*, 2022 WL 2065022, at *3. The court reasoned that if the vegetation did not put Jaranowski himself on notice before he operated the switch, the same vegetation could not have put the railroad on notice a few days earlier. *Id.* Keeping our focus on the standard for summary judgment, we respectfully disagree. Jaranowski was a conductor in the railroad's Transportation department. He was not a qualified track inspector, and he was not trained to identify track defects. A reasonable jury could conclude that a trained inspector acting with reasonable care would discover defects that a conductor performing a brief scan might not.

Second, in addition to vegetation and debris in the tie cribs, plaintiff's expert Blackwell identified other defects in switch MA 27. The switch points were skewed, switch fastenings were loose or missing, and the switch operated with excessive lost motion. Again, the railroad argues that even if the switch was defective in the ways Blackwell describes, plaintiff has not presented evidence suggesting that the railroad knew or should have known of those defects. Plaintiff insists that the railroad should have discovered these defects during its regular inspections, and he argues a jury could infer that the inspections were performed negligently. It is true that inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion," *Carmody v. Board of Trustees of the Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018), quoting *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), but plaintiff here offers more.

Plaintiff's expert Blackwell personally inspected switch MA 27 on July 16, 2021, one day after a three-person crew spent 40 minutes cleaning and maintaining the switch. The railroad's Ritter admitted that the crew was there to ensure the switch was in good condition before Blackwell's inspection, and the crew left the switch well lubricated and entirely free of debris and vegetation. Given Ritter's testimony, a reasonable jury could infer that the crew spent more time and effort cleaning and maintaining the switch before Blackwell's inspection than is spent on an ordinary switch inspection. Yet, even despite those unusual efforts, Blackwell still discovered missing fastenings, skewed switch points, and excessive lost motion. A jury could reasonably conclude that the railroad's October 15th inspection likewise should have discovered defects in the switch but did not. We thus find sufficient evidence to submit to a jury the question whether the railroad at least should have known before plaintiff's injury that switch MA 27 was defective.

B. *Notice and the Federal Track Safety Standards*

As an alternative theory of liability, Jaranowski argues that even if the railroad did not have actual or constructive notice of the defective switch, the defective switch established negligence per se because the track violated federal Track Safety Standards. In an FELA action, "the violation of a statute or regulation … automatically constitutes a breach of the employer's duty and negligence *per se* and will result in liability if the violation contributed in fact to the plaintiff's injury." *Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 683 (7th Cir. 2006), quoting *Walden v. Illinois Central Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992). Although we have found a genuine factual dispute for trial on the issue of actual or constructive notice,

the negligence per se theory would, according to Jaranowski, call for jury instructions that do not require him to prove actual or constructive notice of the defective switch.

Jaranowski contends he can show negligence per se by showing violations of various Track Safety Standards that caused his injury. Specifically, he argues the evidence can show violations of 49 C.F.R. § 213.5(a) (requiring track owners to comply with Track Safety Standards or to halt operations on noncompliant track); § 213.37(c) (requiring that vegetation on or near track be controlled so as not to interfere with rail workers' duties); § 213.133(a) (requiring that switch fastenings be intact and maintained so that components stay in place); § 213.135(e) (requiring that each switch be operable "without excessive lost motion"); and § 213.233(b) and (d) (requiring visual track inspections and immediate remedy of all defects).

The railroad contends that the federal Track Safety Standards are violated only when the owner of the track has actual or constructive notice of the alleged violation. We agree. Section 213.5(a) provides that any track owner who "knows or has notice that that track does not comply with the requirements of this part" shall bring the track into compliance or halt operations on the track. 49 C.F.R. § 213.5(a). Failure to do so may result in civil penalties imposed by the Federal Railroad Administrator. §§ 213.15(a) and 213.5(d).

In its final rule adopting the Track Safety Standards in 1998, the FRA explained that the Track Safety Standards are enforced only against a track owner "'who knows or has notice' that the track does not meet compliance standards." Track Safety Standards, 63 Fed. Reg. 33,992, 33,995 (June 22, 1998). Compared to other railroad safety regulations, this

knowledge element is "unique to the track regulations." *Id.* Generally, railroads are strictly liable if they fail to comply with FRA regulations. The final rule for the Track Safety Standards explained, however, that the FRA included a notice requirement for the track regulations because it recognized that railroads, even when exercising reasonable care, cannot prevent all track defects, which may occur suddenly due to changing traffic patterns or weather and may arise in remote areas. The regulation therefore provides that railroads "are held liable for non-compliance or civil penalties for only those defects that they knew about or those that are so evident the railroad is deemed to have known about them." *Id.*

Jaranowski acknowledges that the notice requirement in § 213.5 must be satisfied before the Federal Railroad Administrator may impose civil penalties, but he insists that a railroad's failure to comply with Track Safety Standards, when it results in employee injury, is actionable under the FELA even if the railroad lacked notice of the defect. He argues that the text of the track regulations at issue in this case, for example, 49 C.F.R. § 213.135(e), includes no notice requirement. That provision states: "Each switch stand and connecting rod shall be securely fastened and operable without excessive lost motion." 49 C.F.R. § 213.135(e). The final rule, however, distinguishes between track defects and violations of the Track Safety Standards. The rule explains that without the "knows or has notice" language found in § 213.5, "any defect found by an FRA inspector could be written as a violation," regardless of whether the railroad knew or should have known of the defect. 63 Fed. Reg. at 33,996. It is therefore a track defect if a switch operates with excessive lost motion, see 49 C.F.R. § 213.135(e), but it is not a violation of the Track Safety

Standards unless the railroad knew or should have known of that defect and failed to correct it.[1]

A railroad does not violate the federal Track Safety Standards unless it has actual or constructive notice of the alleged defect. To prevail on his claim of negligence per se, Jaranowski must establish that the railroad violated a track regulation, which in turn requires him to show that the railroad had actual or constructive notice of the alleged defect. As we found above, however, there is sufficient evidence in the record for a reasonable jury to find that the railroad knew or should have known of defects in switch MA 27. Summary judgment should not have been granted to defendant on this claim.

*Conclusion*

Because the record shows a genuine dispute as to whether the railroad at least should have known that switch MA 27 was defective at the time plaintiff was injured, the judgment of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[1] The Eleventh Circuit reached the same conclusion in a non-precedential decision. *Swoope v. CSX Transportation, Inc.*, 666 F. App'x 820, 823–24 (11th Cir. 2016).