In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1430

JEFFREY MANNOIA,

*Plaintiff-Appellant,*

*v.*

DAVID G. FARROW, Detective,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3274—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED SEPTEMBER 29, 2006—DECIDED FEBRUARY 7, 2007

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In February 2005, during a scheduled weekend visit, Jeffrey Mannoia took his two minor children from Wisconsin to his family home in Hawaii without the knowledge or permission of his estranged wife and the mother of the children. His wife filed a complaint with the Gurnee, Illinois Police Department, which was investigated by Detective David Farrow. Child abduction charges were filed against Mannoia and he was arrested in Maui. The charges against him were later dropped, and Mannoia sued Farrow, alleging that Farrow violated his Fourth Amendment rights by intentionally misrepresenting the facts to the judge who issued the arrest warrant. The district court found that

there was probable cause to support the issuance of the arrest warrant and granted Farrow's summary judgment motion in its entirety. We affirm the district court's judgment because Mannoia has not shown that Farrow deliberately or with a reckless disregard for the truth made misrepresentations to the issuing judge that were necessary to her probable cause determination. Because Mannoia cannot establish that Farrow violated his Fourth Amendment rights, we conclude that Farrow is protected from Mannoia's suit by the defense of qualified immunity.

## I.  BACKGROUND

This case arises from a child custody dispute between two married but separated parents, Christine and Plaintiff-Appellant Jeffrey Mannoia.[1] In April 2004, Kenosha County Child Welfare Services removed the couple's two children from Christine's care. Around that time, Mannoia took the children to his family's home in Hawaii. In the fall of 2004, Mannoia brought the children to Illinois and enrolled them in school in Gurnee, Illinois. At the beginning of February 2005, Christine took the children for a weekend visit, and afterwards refused to return them to Mannoia. She enrolled them in school in Kenosha, Wisconsin and on February 21, 2005, she obtained a child support order from the Wisconsin Circuit Court. The order indicated that Christine was the "custodial person" and Mannoia was the "non-custodial person." On February 26, 2005, Christine allowed Mannoia to take the children for a weekend visit. Without informing Christine, Mannoia took the children back to Hawaii.

---

[1] To distinguish between the appellant and the mother of the children, we will refer to Christine Mannoia by her first name.

On February 28, 2005, Christine filed a written statement with the Gurnee Police Department alleging that Mannoia had not returned the children on February 27, 2005, as arranged.

Christine provided the police department with a copy of the February 21 child support order from the Wisconsin court. Defendant-Appellee Detective David Farrow, whose conduct is at the core of this appeal, called the Kenosha County Circuit Court Clerk's Office to ascertain the nature of the order. Farrow spoke with an employee in the Family Division who informed him that the order dealt with support rather than custody issues. The employee also told Farrow that the Mannoias were still married. Farrow asked the employee if she could clarify the terms "custodial" and "non-custodial" found in the order, and she said that she could not. During the course of his investigation, Farrow also learned from Mannoia's employer that Mannoia had recently been terminated because he had become unreliable and was not showing up for work. Mannoia also had informed his former employer that he planned to return to Hawaii. In addition, two relatives of Mannoia's girlfriend told Farrow that Mannoia had taken the children to Hawaii. Farrow checked Mannoia's cell phone records, which revealed that Mannoia's cell phone was being used in Hawaii. He also tried, unsuccessfully, to reach Mannoia at his parents' home in Hawaii.

After completing his investigation, Farrow spoke with two Lake County Assistant State's Attorneys ("ASAs"), Geoffrey Howard and John Matthew Chancey. Farrow told the ASAs that Christine was the custodial parent of the children and that Mannoia had moved to Hawaii with the children and did not return them after a scheduled visit. Farrow also showed the ASAs the child support order, records of Mannoia's cell phone usage, and the police report. After reviewing this information, the ASAs

determined that there was a sufficient factual basis for authorizing a charge against Mannoia for child abduction in violation of 720 Ill. Comp. Stat. 5/10-5(b)(1). ASA Howard and his secretary then prepared the arrest warrant for Farrow to present to Lake County Circuit Court Judge Victoria Martin. Farrow appeared before Judge Martin with only the warrant in his possession and represented that there was a valid order granting custody to Christine. He did not show her the child support order. After the warrant was issued, Mannoia was charged with child abduction and arrested in Maui on March 4, 2005. The children were placed in temporary foster care in Maui until they were returned to Christine. The charges against Mannoia were later dropped.

Mannoia filed suit against Farrow under 42 U.S.C. § 1983, claiming a violation of his Fourth Amendment right to be free from arrest and seizure without probable cause; he also brought supplemental state claims for false arrest and malicious prosecution. After discovery concluded, Farrow moved for summary judgment on Mannoia's claims. He also moved to strike portions of Mannoia's Local Rule 56.1(b)(3)(B) Statement of Additional Undisputed Facts ("Local Rule 56.1 Statement") and portions of Mannoia's response to the motion for summary judgment that included expert testimony on police procedures. The district court granted Farrow's motion to strike because it found that Mannoia violated Federal Rule of Civil Procedure 26(a)(2) by failing to disclose the expert testimony to Farrow until after Farrow filed his motion for summary judgment. The court then granted Farrow summary judgment on all of Mannoia's claims, finding that (1) Farrow's investigation of Christine's complaint and the child support order was reasonable; (2) there was no evidence to support Mannoia's claim that Farrow withheld facts from ASA Howard; and (3) a trier of fact would find Farrow's statement to

Judge Martin reasonable. Mannoia seeks reversal of the district court's decision.

## II.  ANALYSIS

### A.  Farrow's Motion to Strike

We review for an abuse of discretion the district court's decision to strike the expert's affidavit submitted by Mannoia in opposition to Farrow's motion for summary judgment. *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 745 (7th Cir. 2005). Under this standard, decisions that are reasonable and not arbitrary will not be disturbed. *Id.* (citing *Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998)).

On October 13, 2005, the district court issued an order giving the parties until November 18, 2005 to conduct limited discovery on the issue of qualified immunity. During this time, the parties took depositions and exchanged written discovery requests. On December 1, 2005, after the discovery period had closed, Farrow filed his motion for summary judgment. In opposing that motion, Mannoia submitted the affidavit of a police procedures expert witness as an exhibit to his Local Rule 56.1 Statement. In the affidavit, the expert offered the opinion that "[n]o reasonably well trained police officer given the facts which Detective Farrow knew or which he could reasonably have obtained, would believe that there was probable cause to arrest Mr. Mannoia for the crime of child abduction." Pl.'s Local Rule 56.1 Statement Ex. N at 3. Farrow moved to strike this affidavit and related portions of Mannoia's response memorandum, and the district court granted the motion concluding that Mannoia did not disclose the expert testimony as required by Federal Rule of Civil Procedure 26(a)(2), but waited until after Farrow filed his summary judgment motion.

Per Rule 26(a)(2), "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Mannoia's argument that "there was no request" to disclose expert witnesses fails in light of Rule 26(a)(2)(C)'s requirement that such disclosures "be made at the times and in the sequence directed by the court." It is undisputed that Mannoia did not disclose his expert witness within the time-frame provided in the district court's October 13 order. As for Mannoia's contention that he was unable to retain an expert until after the close of discovery when the deposition transcripts were prepared, it was his duty to seek relief from the court. In addition, Mannoia was required by Rule 26(e) to supplement his 26(a) disclosures of all individuals having discoverable information upon learning that his disclosures were incomplete. Mannoia does not contend that he did not consider the need to retain an expert during the discovery period. The district court's decision to strike Mannoia's expert witness affidavit and accompanying argument for non-compliance with Rule 26(a) was well within its discretion. *See* Fed. R. Civ. P. 37(c)(1) (A party who, without "substantial justification," fails to make a disclosure required by Rule 26(a) cannot rely on the withheld evidence "at a trial, at a hearing, or on a motion."). So, we affirm the district court on this ground.

## B.  Farrow's Qualified Immunity Defense

Next, we review de novo the district court's grant of summary judgment in favor of Farrow. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). All facts and reasonable inferences must be construed in the light most favorable to Mannoia as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party

will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In response to Mannoia's § 1983 claim, Farrow asserts the defense of qualified immunity, which, if established, shields him from suit. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Qualified immunity may be raised by an officer in a suit challenging the constitutionality of his actions with respect to the application of a warrant. *See Neiman v. Keane*, 232 F.3d 577, 579 (7th Cir. 2000). Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). In *Saucier*, the Supreme Court established a two-part test for resolving the issue of qualified immunity. Under this test, the court first determines whether the facts alleged, considered in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the court so finds, it then considers whether the constitutional right violated was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions are in violation of that right. *Id.*

Turning to *Saucier*'s first prong, then, we begin by addressing Mannoia's assertion that Farrow violated his Fourth Amendment rights by causing an arrest warrant to be issued without probable cause. *See* U.S. Const. amend. IV; *Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003). We note that "[p]robable cause is only a probability or substantial chance of criminal activity, not

a certainty that a crime was committed." *Beauchamp*, 320 F.3d at 743. Mannoia was arrested pursuant to a facially valid warrant; therefore, Farrow violated Mannoia's rights only if a reasonably well-trained officer in Farrow's position should have known that the information he provided in support of the warrant would have failed to establish probable cause and that he should not have applied for the warrant in the first place. *Id.* at 742. To establish that such a violation occurred, Mannoia must show that Farrow "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer['s] determinations that probable cause existed for the arrest[ ]." *Id.* at 742-43 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). A reckless disregard for the truth can also be established by showing that Farrow failed to inform the judge of facts that he knew would detract from a finding of probable cause. *See id.* at 743.

A review of the record indicates that there was probable cause to arrest Mannoia on the child abduction charge. Farrow began his investigation after receiving a complaint from Christine that Mannoia had taken their children, not just a few miles away, but to Hawaii. Farrow learned that Mannoia had indeed left his job and moved to Hawaii. The child support order reviewed by Farrow, while not an order of custody, indicated that Christine was the "custodial person" and Mannoia was the "non-custodial person." And, it would be highly unusual for a custodial parent to be ordered to pay child support as Mannoia was ordered to do. Although an order of custody did not exist, the child support order amply supports the reasonable inference that during the relevant period, Christine had custody of the children.

In his attempt to establish the occurrence of a Fourth Amendment violation, Mannoia makes much of Farrow not

disclosing his conversation with the Clerk's Office employee about the child support order to the ASAs.[2] According to Mannoia, the information provided by that employee definitively established that no custody order existed, and it was critical evidence that should have been revealed. However, whether or not Farrow disclosed to the ASAs his conversation with the Clerk's Office employee is immaterial because she provided him with no information that needed to be disclosed. The conversation did little to establish the meaning of the order that was not already apparent from the face of the document, as the document itself stated that Christine was the custodial person. Indeed, the ASAs testified that Farrow's comments regarding the meaning of the order would have had no impact on their evaluation—they personally examined the order, and, using their legal expertise, concluded that the order satisfied the requirements of the child abduction statute. "Consulting a prosecutor may not give an officer absolute immunity . . . but it goes far to establish qualified immunity." *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004).

After the ASAs decided on the charges, Farrow appeared before Judge Martin to obtain the warrant. Mannoia claims that Farrow deliberately falsified information when he told the judge that there was a valid custody order.[3]

---

[2] Farrow may or may not have told the ASAs about his conversation with the Clerk's office; the record is not conclusive on this point. However, because we are required to draw all reasonable inferences in the non-movant's favor in determining whether summary judgment is proper, *see Anderson*, 477 U.S. at 255, we will assume that Farrow did not reveal this conversation in seeking the arrest warrant.

[3] No court reporter was present in the courtroom when Judge Martin issued the warrant. Judge Martin Dep. 5. The judge

(continued...)

However, because Farrow consulted the ASAs, Farrow reasonably believed the support order constituted a valid custody order, and any statements he may have made to Judge Martin regarding the order reflected that reasonable belief. As such, Farrow cannot be found, as Mannoia argues, to have intentionally withheld the child support order from Judge Martin because he knew it would be "fatal" to his request for an arrest warrant. The order had been reviewed by the ASAs who then decided to file child abduction charges against Mannoia; therefore, Farrow had no reason to believe that the order would have detracted from the judge's finding that probable cause existed to arrest Mannoia.

In sum, Mannoia has not shown that Farrow deliberately made false statements necessary to Judge Martin's probable cause determination or that Farrow failed to tell Judge Martin facts he knew would undermine a finding of probable cause. Because Farrow cannot be found to have violated Mannoia's constitutional rights in procuring the arrest warrant, it is unnecessary to consider the second part of the *Saucier* inquiry, i.e., whether the violated right was clearly established at the time of the alleged injury. 533 U.S. at 201. Therefore, we conclude that Farrow is immune from suit on Mannoia's § 1983 claim. In addition, our finding that the arrest warrant was supported by probable cause precludes Mannoia from recovering on his claims of false arrest and malicious prosecution because under Illinois law, lack of probable cause is an essential element of both torts. *See*

---

(...continued)

testified that she recalled Farrow either telling her or confirming when asked that there was a valid order for custody. *Id.* at 6, 8. However, at Farrow's deposition, he denied telling Judge Martin that such an order existed. Farrow Dep. 105.

*Reynolds v. Meynard, Inc.,* 850 N.E.2d 831, 837 (Ill. App. Ct. 2006).

## III.  CONCLUSION

The district court's entry of summary judgment was proper and is hereby AFFIRMED.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*