In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1996

COMPANIA ADMINISTRADORA
DE RECUPERACION DE ACTIVOS
ADMINISTRADORA DE FONDOS
DE INVERSION SOCIEDAD ANONIMA,

*Plaintiff-Appellee*,

*v.*

TITAN INTERNATIONAL,
INCORPORATED,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 C 3071—**Jeanne E. Scott**, *Judge*.

———————

ARGUED JANUARY 17, 2008—DECIDED JULY 10, 2008

———————

Before RIPPLE, ROVNER and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima ("Compania") sued Titan International, Inc. ("Titan") for breach of a guaranty contract. As an affirmative defense, Titan asserted that Compania had impaired the collateral that secured the guaranteed debt. After discovery, Compania moved

for summary judgment. The district court granted summary judgment in favor of Compania; it concluded that Titan had failed to present any credible evidence of the value of the collateral.[1] Titan timely appealed. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

Titan is an international tire manufacturer based in Illinois. In June 1998, Titan purchased a controlling interest in Fabrica Uruguaya de Neumaticos S.A. ("FUNSA"), a tire manufacturer based in Uruguay. At that time, FUNSA had an existing line of credit in the amount of $5 million from Banco de la Republica Oriental del Uruguay ("the bank"). The line of credit was secured by FUNSA property and equipment.

In April 1999, Titan requested additional credit from the bank to fund FUNSA's operations. The bank agreed to increase FUNSA's line of credit by $1 million if Titan would guarantee the increase. On April 19, 1999, Titan executed a document entitled "Garantia Solidaria" ("the guaranty"). Titan agreed to serve as a surety for any debt owed to the bank by FUNSA, up to $1 million. The bank, accordingly, increased FUNSA's line of credit, and

---

[1] The district court had jurisdiction in this case under 28 U.S.C. § 1332. The plaintiff is a Uruguayan corporation with its principal place of business in Uruguay. The defendant is an Illinois corporation with its principal place of business in Illinois. The amount of controversy exceeds $75,000. We have jurisdiction pursuant to 28 U.S.C. § 1291.

this new debt was secured by a pledge of FUNSA's plant and equipment ("the collateral"), as well as by Titan's guarantee.

On March 4, 2002, FUNSA declared bankruptcy under Uruguayan law. As of the date of the bankruptcy filing, FUNSA owed more than $4 million to the bank. On December 31, 2003, the bank transferred its FUNSA indebtedness, including all of its rights in the collateral and all of its rights against Titan under the guaranty, to Compania.[2]

Buyers were sought for the collateral both before and after it was transferred from the bank to Compania, but an agreement was never reached on a sale. In March 2004, Compania obtained a third-party appraisal of the collateral. The appraiser valued the collateral at between $1.5 million and $2.3 million. On May 6, 2004, Compania sold its interests in the collateral, along with a number of other outstanding notes, to a third party for $2 million. Compania, however, failed to notify Titan in advance of the sale. The third party subsequently foreclosed on the collateral, which was sold at public auction pursuant to Uruguayan bankruptcy law for $1 million.

With approximately $2 million of FUNSA's debt left unpaid, Compania then pursued other avenues of collection. It demanded that Titan pay it $1 million, the amount

---

[2] The full name of this company at the time of the events in question was Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima ("Compania"). Compania since has changed its name to Republica Administradora de Fondos de Inversion Sociedad Anonima ("RAFISA"). Both the district court opinion and the appellant's brief refer to the entity as "Compania," and we follow this convention.

of FUNSA's debt that Titan had guaranteed. Titan, however, refused to pay under the guaranty. It contended, among other things, that Compania's failure to provide notice prior to the sale had impaired Titan's rights in the collateral that secured the debt. Consequently, Compania initiated this action to enforce the guaranty agreement.

During discovery, the district court issued a scheduling order that required the parties to disclose all of their expert witnesses by February 3, 2006. Titan did not disclose any expert witnesses prior to that date.

On February 21, however, nearly three weeks after the expert witness disclosure deadline and days before fact discovery was set to conclude, Titan served Compania with two expert declarations. In one of these declarations, Ricardo Olivera offered an opinion on the interpretation of Uruguayan law. In the other declaration, Mark Haron offered an opinion on the value of the FUNSA collateral based on his experience buying and selling tires and equipment on the worldwide tire market. Titan did not disclose any other experts at this time.

Compania moved to strike both experts' declarations as being untimely disclosed. On April 21, 2006, the district court granted Compania's motion to strike Titan's proffered expert declarations on the ground that the delay in disclosure was neither justified nor harmless.

On June 2, 2006, Compania moved for summary judgment. It contended that Titan had presented no credible evidence that the value of the collateral was, in fact, greater than the price for which it had been sold; accordingly, urged Compania, Titan could not show that its interests in the collateral had been impaired.

On June 27, 2006, Titan filed its opposition to Compania's motion for summary judgment. As evidence of the value of the collateral, it attached an affidavit from Maurice Taylor.[3] Mr. Taylor was the President and CEO of Titan from 1990 to 2005, and he was employed as Titan's CEO and chairman at the time that his affidavit was filed. Although the majority of Taylor's testimony described the extent of his involvement in the decision to guarantee FUNSA's debt, paragraphs 8 and 9 of his affidavit also asserted his belief that the value of the FUNSA collateral exceeded $10 million. Specifically, the affidavit noted:

> In connection with my duties at Titan International, Inc., I have extensive experience purchasing and selling used Tire and Wheel manufacturing equipment on the world market, and, accordingly, I have specific and up-to-date knowledge of the value of used

---

[3] Titan also included a second affidavit from Ricardo Olivera. Olivera's second affidavit was substantially the same as his original proffered expert testimony, which already had been stricken once by the district court because it was not timely disclosed. Compania again moved to strike Olivera's affidavit, and the district court granted the motion. Titan does not challenge this order on appeal.

Titan also attached to its opposition motion the working paper of Dannys Correa, an auditor with PricewaterhouseCoopers Ltda., Uruguay. The working paper included a February 2000 appraisal of the collateral performed by another auditor, Mario Duran Lasala. Lasala had estimated the final replacement cost of the collateral as approximately $14.9 million and the "final selling price" as $9 million. The district court, however, concluded that this paper was both unreliable and inadmissable hearsay and refused to consider it. Titan also does not challenge this conclusion on appeal.

equipment of the sort on the FUNSA premises at the time of the bankruptcy of FUNSA. Based on this knowledge and a review of the list of equipment at FUNSA, and based further upon my investigation of equipment at FUNSA at the time of the bankruptcy, including my knowledge of equipment sent to FUNSA by Titan during the period of Titan's ownership interest in FUNSA, the value of the equipment at FUNSA at the time of its bankruptcy exceeded US$ 10 million.

R.58, Ex. A at ¶ 8. Compania moved to strike paragraphs 8 and 9 of this affidavit as undisclosed expert testimony, and the district court granted its motion.

On October 19, 2006, the district court granted Compania's motion for summary judgment. It held that Titan had presented no competent evidence that either the bank or Compania had impaired the value of the collateral or otherwise increased the risk to Titan under the guaranty. Titan timely appealed.

## II

## DISCUSSION

### A.

Titan first challenges the district court's decision not to consider the testimony of Maurice Taylor regarding the estimated value of the collateral. The court determined that Taylor's opinion, although styled as lay opinion testimony, was actually expert testimony. The district court excluded this testimony because Titan never disclosed Taylor as an expert according to the procedures

required by Federal Rule of Civil Procedure 26(a)(2).[4]

We generally review for an abuse of discretion the district court's decision to exclude expert testimony. *Mannoia v. Farrow*, 476 F.3d 453, 456 (7th Cir. 2007). When this decision is based on an interpretation of the Federal Rules of Evidence, however, we review de novo the court's interpretation of the law. The district court's classification of a witness as lay or expert is a legal interpretation that we review de novo. *See United States v. Davis*, 471 F.3d 783, 788 (7th Cir. 2006) ("Legal conclusions made by the trial court in reaching the decision to admit expert testimony are reviewed *de novo*."); *United States v. Gray*, 410 F.3d 338, 347 (7th Cir. 2005) ("[O]ur review of whether [the witness] was properly qualified as an expert is *de novo* and our review of the decision to admit the testimony is for an abuse of discretion.").

Here, the district court classified Maurice Taylor's affidavit as expert testimony under Federal Rule of Evidence 702, and therefore it was inadmissible because Titan had not disclosed Taylor as an expert witness. Titan contends that Taylor's testimony should have been characterized as lay opinion testimony under Rule 701, not as expert testimony under Rule 702, and, therefore, it was not required to disclose Taylor as an expert witness prior to the scheduled date. Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are

---

[4] Notably, Titan also never disclosed Taylor as a potential lay witness on the question of valuation, despite an interrogatory requesting such disclosures.

(a) rationally based on the perception of the witness,
(b) helpful to a clear understanding of the witness'
testimony or the determination of a fact in issue, and
(c) not based on scientific, technical, or other special-
ized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 (2000).

Titan contends that Taylor's testimony was based on
his "extensive experience purchasing and selling used
Tire and Wheel manufacturing equipment on the world
market," R.58, Ex. A at ¶ 8, but not on any specialized or
scientific techniques or processes of reasoning that can
be mastered only by specialists in the field. In Titan's
view, therefore, Taylor's opinion was based on his own
perceptions of, and experience in, buying and selling
the equipment in question. According to Titan, Taylor's
testimony was "quintessential Rule 701 testimony" re-
garding "the value of his property." *United States v.
Conn,* 297 F.3d 548, 554 n.2 (7th Cir. 2002) (quoting
*Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190,
1198 (3d Cir. 1995)).

In support of its position, Titan relies on a number of
cases from other circuits that permit business owners or
officers to testify without being qualified as experts. *See
Asplundh,* 57 F.3d at 1198 (noting that a maintenance
supervisor was competent to testify as to the cause of an
accident when he had personally inspected the damaged
parts); *Lightning Lube v. Witco,* 4 F.3d 1153, 1174 (3d
Cir. 1993) (holding that the owner of a small business
may testify as a lay witness regarding the projected
future profits of his business); *State v. Brown,* 836 S.W.2d
530, 549-50 (Tenn. 1992) (holding that a nurse may testify
as a lay witness about the nature of injuries she per-
sonally observed).

The advisory committee notes to Rule 701 explain, however, that a business owner or officer is allowed to testify without being qualified as an expert only because that testimony is tied to his or her personal knowledge:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. *See, e.g., Lightning Lube, Inc. v. Witco Corp.* 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

Fed. R. Evid. 701 (advisory committee notes).

This case does not present such a circumstance. Taylor purported to value the collateral by applying his generalized knowledge of the worldwide tire market, gained through his experience in the worldwide tire business, to a proffered list of specific items owned by a third party. Taylor's only connection to the items in question is the fact that he is an officer of a company that, at one time, held a controlling interest in a company that, at one time, owned the collateral. Titan, however, had no ownership interest in FUNSA at the time that Taylor made his purported valuation. Furthermore, Titan identifies no evidence that Taylor participated in FUNSA's initial purchase of the particular items in question, and his affidavit belies any contention

that he based his valuation opinion on personal knowledge of the collateral. Indeed, in his deposition, Taylor specifically disclaimed any personal knowledge of the particular items that were included in the sale.

Taylor's position therefore was not akin to the owner of a small business testifying to the value of that business. His attempt at valuation was not based on any knowledge obtained through his special relationship with the items in question; instead, he simply looked at a list of items provided by Compania, and he estimated their value based on his extensive experience purchasing and selling the type of goods at issue. This is the kind of testimony traditionally provided by an expert: "[I]t could have been offered by any individual with specialized knowledge of the [tire] market." *Conn*, 297 F.3d at 555. In fact, Taylor's testimony on this issue was essentially the same as that of Titan's originally retained valuation expert, Haron, whose statements already had been excluded by the district court because they were untimely disclosed.

Rule 701 recently was amended "to emphasize that lay opinion testimony is limited to those observations of a lay witness that are 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " *Conn*, 297 F.3d at 553 (quoting Fed. R. Evid. 701). The amendment was designed to avoid this very situation—to prevent parties from "proffering an expert in lay witness clothing." Fed. R. Evid. 701 (advisory committee notes). We have noted:

> Before the 2000 amendment to Rule 701, some courts had become more lenient in the admission of lay opinion on subjects appropriate for expert testimony. The amendment was designed to make clear that

courts must scrutinize witness testimony to ensure that all testimony based on scientific, technical or other specialized knowledge is subjected to the reliability standard of Rule 702.

*Conn*, 297 F.3d at 553 (internal citations omitted).

Testimony based solely on a person's special training or experience is properly classified as expert testimony, and therefore it is not admissible under Rule 701. *Id*. at 554-55. Taylor's valuation attempt was based on his special experience in the tire industry, not on his personal knowledge of the goods in question; therefore, it falls within the purview of Rule 702. Accordingly, we conclude that the district court properly classified paragraphs 8 and 9 of Taylor's affidavit as expert testimony.

Because Titan failed to disclose Taylor as an expert witness prior to the disclosure deadline, the district court did not abuse its discretion when it excluded his testimony. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998) (holding that "the district court acted well within its discretion when it imposed the sanction of excluding the testimony of the expert witness" because the party had failed to comply with the court's scheduling order); *Hill v. Porter Mem. Hosp.*, 90 F.3d 220, 224 (7th Cir. 1996) (noting that "[w]hen one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction").

## B.

Finally, Titan submits that an affidavit from former FUNSA employee Cesar Villar should have been con-

sidered by the district court as evidence of the value of the collateral. Villar's affidavit recounted statements, allegedly made to him by unidentified representatives of unidentified foreign companies, regarding a possible purchase of the collateral. He speculated that unidentified foreign companies would have paid more than $2 million for the collateral under certain conditions, although he did not specify a particular dollar figure.[5] The district court did not specifically mention Villar's affidavit when it discussed the issue of valuation in its opinion. Accordingly, Titan contends that the district court improperly "ignored" Villar's affidavit when it determined that no credible evidence supported Titan's assertion that the collateral was valued at significantly more than $2 million.

Titan's contention is without merit. Titan never pointed to Villar's affidavit as evidence of valuation in its brief in opposition to Compania's summary judgment motion.

---

[5] Specifically, Villar's affidavit stated:

> Approximately two years ago, after the termination of my employment relationship with FUNSA, I represented a foreign company which was interested in the acquisition of FUNSA. . . . The foreign company which I represented in the said negotiations, would have paid (and its offer involved) an amount higher than USD 2,000,000 in case the abovementioned strict terms by [the bank] had not been required.

> . . . I was contacted by another foreign company which was interested in the acquisition of part of the equipment and collaterals of FUNSA. The abovementioned company could not make its offer since the decision of [the bank] was to sell the collateral as a whole and not in parts . . . .

R.58, Ex. C.

Instead, it referenced the affidavit only for the assertion that "difficult political issues" were involved in the FUNSA bankruptcy. R.57 at 4, 7-8. The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e)(2) (requiring an adverse party to "set out specific facts").

Furthermore, Federal Rule of Civil Procedure 56(e)(1) states that affidavits opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Villar's proffered statements—that two unidentified foreign companies would have purchased the collateral for more than $2 million had certain conditions been met—are entirely without foundation. He claimed no personal knowledge of the value of the collateral, and his assertions are based entirely on speculation and hearsay. The district court correctly gave no credence in its opinion to such conclusory and unsupported assertions. *See Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998).

The district court did not err when it concluded that Titan had failed to present evidence of valuation sufficient to create a genuine issue of material fact for trial.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED