**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2012[*]
Decided June 4, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-3091

| | |
|---|---|
| GABRIEL D. TOADER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 C 6684 |
| J.P. MORGAN CHASE BANK, et al., *Defendants-Appellees.* | Robert W. Gettleman *Judge.* |

**O R D E R**

Gabriel Toader appeals from a district court's order granting summary judgment to J.P. Morgan Chase and Bank of America, both of which he sued for violations of the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 et seq. Toader claimed that the banks violated the act by disclosing his financial records to government investigators. We affirm.

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(c).

Toader participated in an online-fraud scheme that conned more than 2,000 people out of over $5 million. He worked with cohorts in Romania who posed as sellers on eBay and similar websites to induce people to wire money for purchases that were not fulfilled. Toader's role was to conceal the illegal activity by directing a group of fellow schemers in Chicago who used aliases to collect the wired money. A share of the proceeds was deposited in bank accounts that Toader opened, including several at Chase (now J.P. Morgan Chase) and Bank of America, and then wired to Romanian and Cypriot bank accounts owned by the Romanian co-schemers.

Toader's numerous large cash deposits and wire transfers to Romania and Cyprus raised "red flags" with Chase's fraud detection unit, and the bank began to investigate his accounts. Chase concluded that Toader's activities suggested potential criminal activity that was sufficiently suspicious to require notifying law enforcement. In June 2006, Chase notified federal authorities of the account activity that had aroused its suspicion. Later that year, law-enforcement personnel called the bank and sought information related to Toader's transactions. The bank responded by turning over copies of his deposit and wire-transfer slips showing that over 7 months Toader deposited in cash and then transferred to Cyprus and Romania more than $350,000.

In December 2007, the government filed a criminal complaint against Toader for wire fraud, 18 U.S.C. § 1343, and money laundering, § 1956(a). The complaint was accompanied by an affidavit from Immigration and Customs Enforcement Special Agent Matthew Siffermann detailing the government's charges against Toader. Siffermann's affidavit described some of the evidence confirming Toader's involvement in the scam, including Toader's banking activity at Bank of America: "[a]ccording to records provided to the government by Bank of America, customer Gabriel Toader maintained a savings account and three checking accounts at Bank of America during 2005." In 2008, as part of the government's investigation, a grand jury subpoenaed Chase and Bank of America for Toader's account information. The banks complied with the subpoena by providing the number and names of Toader's accounts, tax identification numbers, balances, deposits, and transfers. Toader later pleaded guilty to wire fraud and was sentenced to 96 months' imprisonment.[1]

Toader then sued J.P. Morgan Chase and Bank of America under the RFPA for disclosing his account information to the government before the government issued a

---

[1] Toader's sentence was later reduced to 72 months, *United States v. Toader*, No. 07-cr-00862 (N.D. Ill. May 19, 2011). He is currently in custody of the U.S. Bureau of Prisons.

subpoena. The RFPA prohibits financial institutions from providing government officials with access to a customer's financial records unless certain procedures have been followed. *See* 12 U.S.C. §§ 3402, 3403; *United States v. Residence Located at 218 Third Street*, 805 F.2d 256, 260 (7th Cir. 1986). Toader contended that Chase violated the RFPA when it complied with the government's telephone request for copies of his deposit and wire-transfer slips because, he says, the government was not authorized to access those records without providing a subpoena, search warrant, or formal written request. *See* § 3402. He argued that Bank of America too violated the RFPA by disclosing records of his savings and checking accounts to investigators before the government issued a subpoena providing legal authority to release them. *See* § 3403(a). Bank of America must have disclosed Toader's records before they were subpoenaed in 2008, he says, because Siffermann's affidavit from 2007 mentioned records of his that Bank of America had provided.

The district court granted summary judgment for both banks. Based on the undisputed facts, the court found Chase not liable under the RFPA for disclosing copies of Toader's wire and deposit slips because it made the disclosure to alert the government about a potential statutory or regulatory violation. *See* § 3403(c). The court also found that Chase was entitled to summary judgment under a separate statute, the Annunzio-Wylie Anti-Money Laundering Act of 1992, 31 U.S.C. § 5318(g), which similarly insulates a financial institution from liability for disclosures to the government about possible illegal activity. The district court further decided that Toader had not created a fact question as to whether Bank of America disclosed his account information before the information was subpoenaed; his only evidence of the timing of Bank of America's disclosure was the statement from Siffermann's affidavit—a statement that the court found inadmissible to defeat summary judgment because it was not based on Siffermann's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4).

On appeal Toader argues that the district court erred in granting summary judgment for J.P. Morgan Chase because the bank's disclosures exceeded the scope of the immunity provisions in the RFPA and Annunzio-Wylie Act. He acknowledges that § 3403(c) and § 5318(g) provide safe harbors from liability for Chase's first notification to authorities in June 2006 of his suspicious transactions, but contends that Chase should nonetheless be liable under § 3402 for disclosing his deposit and wire records in response to an unwritten request from the government later in 2006. But the records that Chase disclosed contained only information about transactions that the bank suspected were illegal, and that disclosure is protected by § 3403(c) even if it occurred after an unwritten government request. *See* § 3402 (stating that § 3403(c) is an exception); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (upholding the application of § 3403(c) to disclosures made in response to spoken statements by law enforcement agents). Moreover, that the government solicited Toader's records has no bearing on Chase's immunity under

§ 5318(g), which covers both voluntary disclosures and disclosures at the behest of investigative authorities. *See Coronado v. BankAtlantic Bancorp, Inc.*, 222 F.3d 1315, 1321-22 (11th Cir. 2000). The district court thus correctly concluded that Chase is immune from liability under both the RFPA and the safe harbor provision in § 5318(g).

Toader next challenges the court's grant of summary judgment for Bank of America and contends that the language from Siffermann's affidavit should be admissible because Siffermann attested that the affidavit was based in part on his personal knowledge. But Siffermann also based his affidavit on several sources that would be inadmissible as hearsay, such as conversations with other law enforcement authorities and records maintained by other agencies. *See* FED. R. EVID. 801(c), 802; *United States v. Christ*, 513 F.3d 762, 769-770 (7th Cir. 2008); *Collins v. Seeman*, 462 F.3d 757, 760 n. 1 (7th Cir.2006). And because Siffermann did not provide any foundation for how he knew that Bank of America had disclosed Toader's records to the government, the statement fails to satisfy the personal-knowledge requirement of Rule 56(c); thus the district court rightly refused to consider it. *See Compania Administradora De Recuperacion De Activos Administradora De Fondos De Inversion Sociedad Anonima v. Titan Int'l*, 533 F.3d 555, 562 (7th Cir. 2008); *Ward v. First Fed. Sav. Bank*, 173 F.3d 611, 618 (7th Cir. 1999). Because the only proffered evidence that the bank disclosed Toader's financial information is inadmissible, the district court correctly granted summary judgment for Bank of America.

For the foregoing reasons, the judgment of the district court is AFFIRMED.