

IN THE

# Indiana Supreme Court

FILED

Feb 05 2024, 1:56 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



Supreme Court Case No. 24S-MI-46

## State of Indiana by and through its Department of Natural Resources,

*Appellant*

–v–

## Kailee M. Leonard and Jeffrey S. McQuary,

*Appellees*

Argued: September 21, 2023 | Decided: February 5, 2024

Appeal from the Marion Superior Court
No. 49D01-1706-MI-23427
The Honorable David J. Dreyer, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-MI-685

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

As captured by Lord Byron's "Epitaph to a Dog," the death of man's best friend often prompts a visceral response—perhaps none more so than the one here, where a dog's death triggered over a decade of litigation in both state and federal courts. That litigation has culminated in a case involving the intersection of a successful Section 1983 federal action and Indiana's public-employee indemnification statute. Under the statute, a public employee is entitled to indemnification if their actions were noncriminal and within the scope of employment.

Here, a federal jury found a state conservation officer liable for false arrest based on his actions after a driver hit and killed his dog. The officer then assigned his indemnification rights against the State to the driver and her attorney. After a bench trial in state court, a judge ordered the State to indemnify the officer and pay the federal judgment. The State argues the court erred because the officer's actions constituted a criminal act.

We affirm the trial court. In reaching that conclusion, we clarify both the meaning of "noncriminal" and the parties' relative burdens under the public-employee indemnification statute. And we ultimately hold that the evidence establishes the officer's actions were noncriminal.

## Facts and Procedural History

In December 2012, Kailee Leonard was driving to her boyfriend's house when, while passing the home of Department of Natural Resources Conservation Officer Scott Johnson, she hit and killed the family's pet Border Collie, Gypsy. Realizing she had hit the dog, Leonard initially stopped but continued driving about a mile to her boyfriend's house so that he could return with her to the accident scene. Leonard's boyfriend then drove the couple in his vehicle to Officer Johnson's home, where Leonard spoke with the officer, apologized for hitting the dog, and removed a few pieces of her car from the roadway.

Officer Johnson later questioned whether Leonard's actions "would be classified as a . . . misdemeanor violation." And so, a few months after the

accident, Officer Johnson, while on duty and in uniform, spoke with Hancock County's Chief Deputy Prosecutor. Officer Johnson asked whether leaving the scene of an accident involving a pet and returning "over an hour later" in a different vehicle "would meet the elements of leaving the scene of an accident." On the prosecutor's advice, Officer Johnson relayed "the basics about the incident" to an investigator. Sometime later, the investigator told Officer Johnson "that he found probable cause" to charge Leonard but conveyed he wasn't going to file "charges at that time." Officer Johnson subsequently spoke on the phone with the Hancock County Prosecutor about potential charges against Leonard.

Then, in June 2013, Leonard received in the mail a criminal summons charging her with Class B misdemeanor failure to stop after an accident. Leonard hired an attorney and answered the summons, but she was never arrested. About a year later, after Officer Johnson asked for the charges to be dropped, the State dismissed the case.

Leonard then filed a federal lawsuit against Officer Johnson under 42 U.S.C. § 1983 ("Section 1983"), claiming that his "actions in procuring [her] prosecution constitute[d] false arrest" in violation of her constitutional rights. Leonard alleged Officer Johnson "falsely" told the investigator that she "left the scene of the accident and did not return until the following day."

Officer Johnson requested the State represent him in the federal lawsuit, but the State eventually declined, believing his alleged "conduct was not within the scope of [his] duties." Officer Johnson proceeded pro se, drafting and filing an unsuccessful motion to dismiss. He eventually hired an attorney, and the case proceeded to trial. The jury found Leonard "was falsely arrested by" Officer Johnson and awarded her $10,000 in damages. The federal court then approved Leonard's request for $52,462 in attorney's fees and costs, resulting in a $62,462 judgment.

Unable to pay the full amount, Officer Johnson assigned his indemnification rights against the State to Leonard and her attorney, Jeffrey McQuary (collectively "Leonard" hereafter). Leonard sued the State, seeking a declaratory judgment that the State had a duty to

indemnify Officer Johnson and pay the judgment under Indiana's public-employee indemnification statute.

After the State's ultimately unsuccessful motion for summary judgment, *see Smith v. State*, 122 N.E.3d 991, 993–94 (Ind. Ct. App. 2019), the case proceeded to a bench trial. There, the parties disputed the indemnification statute's two requirements: whether Officer Johnson's actions were noncriminal and whether they were within the scope of his employment. The trial court found in Leonard's favor and ordered the State to pay the $62,462 judgment. The court's order, however, identified the only issue as whether Officer Johnson acted within the scope of employment—concluding he did. Yet the court made one finding related to whether his actions were noncriminal: "Johnson falsely maintained that Leonard had left the scene and returned the next day – not shortly after the accident, as had actually happened." Pointing to this finding, the State moved to correct error, arguing Officer Johnson was not entitled to indemnification because the court found his "actions were not noncriminal." That motion was deemed denied after the trial court failed to rule on it within 45 days. Ind. Trial Rule 53.3(a).

The State appealed, challenging only whether Officer Johnson's actions were "noncriminal." Our Court of Appeals reversed, holding the trial court effectively found that Officer Johnson committed the crime of false informing, and his conduct was therefore not noncriminal as required by statute. *State ex rel. Dep't of Nat. Res. v. Smith*, 202 N.E.3d 1105, 1112–13 (Ind. Ct. App. 2023).

Leonard petitioned for transfer, which we now grant, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).[1]

---

[1] We summarily affirm the portion of the Court of Appeals' opinion holding that the State did not waive its challenge to the noncriminality of Officer Johnson's actions. *See* App. R. 58(A)(2).

# Standard of Review

Though the State appeals from the denial of its motion to correct error, we apply the standard of review for the underlying judgment. *Luxury Townhomes, LLC v. McKinley Props., Inc.*, 992 N.E.2d 810, 815 (Ind. Ct. App. 2013), *trans. denied*. The trial court here issued findings of fact and conclusions of law *sua sponte.* We review issues covered by the findings by determining whether the evidence supports the findings and, if so, whether those findings support the judgment. T.R. 52(A); *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). For issues not covered by the findings, we apply our general judgment standard, meaning we "should affirm based on any legal theory supported by the evidence." *Steele-Giri*, 51 N.E.3d at 123–24; *see also* T.R. 52(D).

# Discussion and Decision

The circumstances surrounding Gypsy's death bring us to the intersection of a successful Section 1983 federal action and Indiana's public-employee indemnification statute. Section 1983 provides individuals a cause of action for civil rights violations arising from a government employee's reckless or deliberate conduct. *See, e.g.*, *Mannoia v. Farrow*, 476 F.3d 453, 458 (7th Cir. 2007). When a public employee is found liable, the indemnification statute requires the State to pay the judgment if (1) the violation occurred due to a "a noncriminal act or omission" that was (2) "within the scope of the public employee's employment." Ind. Code § 34-13-4-1. As the State has conceded that Officer Johnson was acting within the scope of his employment, the dispute turns only on whether his conduct was noncriminal.

The trial court did not explicitly conclude that Officer Johnson's actions were noncriminal, but it implicitly made this determination by ordering the State to indemnify him. The State argues the trial court erred, pointing to its finding that Officer Johnson "falsely maintained that Leonard had left the scene and returned the next day – not shortly after the accident, as had actually happened." In the State's view, this falsehood finding reveals the court concluded Officer Johnson committed the crime of false

informing, which occurs when a person knowingly gives either "a false report of the commission of a crime" or "false information to a law enforcement officer that relates to the commission of a crime." I.C. § 35-44.1-2-3(d)(1). And the State maintains the finding is supported by Leonard's federal false-arrest complaint and the resulting jury verdict, both of which were admitted into evidence. We disagree.

Leonard's federal false-arrest complaint and corresponding jury verdict do not establish that Officer Johnson committed a criminal act and do not support the trial court's falsehood finding. In reaching that conclusion, we clarify that the party seeking indemnification has the initial burden to show that the loss occurred because of a noncriminal act or omission. The burden then shifts to the State to rebut that showing by producing evidence establishing a prima facie case of criminal conduct. Here, Leonard demonstrated that Officer Johnson's conduct was noncriminal, and the State failed to establish a prima facie case that he committed the crime of false informing. And though we hold the trial court's falsehood finding is clearly erroneous, the evidence supports the court's judgment. We therefore affirm.

## I. The public employee seeking indemnification must show that the loss occurred because of a noncriminal act or omission, but the State can rebut that showing.

We first determine the meaning of "noncriminal" in the public-employee indemnification statute and the parties' burdens on this requirement. Because the statute does not define the term, we consider its "plain, or ordinary and usual, sense." I.C. § 1-1-4-1(1). A criminal act subjects the actor to criminal prosecution. *Crime*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/crime (last visited Feb. 5, 2024) (defining "crime" as "an illegal act for which someone can be punished by the government"); *Act*, Black's Law Dictionary (11th ed. 2019) (defining "criminal act" as an "unlawful act that subjects the actor to prosecution under criminal law"). And for a person to be subject

to criminal prosecution, the State must have a prima facie case. I.C. § 35-34-1-2(a), (e). Thus, a noncriminal act or omission is one for which the State cannot establish a prima facie showing of criminal conduct.

As the statute unambiguously mandates indemnification only when a loss occurs due to a public employee's noncriminal conduct, the party seeking indemnification must first satisfy this requirement. The burden then shifts to the State to rebut the showing by producing evidence that establishes a prima facie case of criminal conduct. A prima facie case is essential because employee misconduct that results in civil liability does not necessarily result in criminal liability. As is relevant here, civil liability can be imposed in a Section 1983 action for false arrest based on reckless conduct, *see Mannoia*, 476 F.3d at 458, but criminal liability often requires a more culpable mens rea, such as knowing or intentional conduct. Thus, depending on the proffered criminal act, the State may need to produce evidence other than an employee's civil liability to make the requisite prima facie showing. Since many civil rights violations can be framed as crimes with overlapping elements, solidifying this liability distinction preserves the indemnification statute's functionality. Mindful of these principles, we now apply them here.

## A. Leonard produced evidence that Officer Johnson's conduct was noncriminal.

Leonard alleged in her complaint that the State was "required to pay the judgment, costs, and attorney fees assessed against" Officer Johnson under the indemnification statute. And she presented evidence during the bench trial demonstrating that Officer Johnson did not knowingly give either "a false report of the commission of a crime" or "false information to a law enforcement officer that relates to the commission of a crime." I.C. § 35-44.1-2-3(d)(1).

Indeed, Officer Johnson consistently testified that he truthfully told prosecutors and the investigator that Leonard returned on the night of the accident. And his statements are supported by the other three witnesses who testified. Leonard stated that she "didn't know" whether it was Officer Johnson's or someone else's actions that led to her being charged.

Officer Johnson's supervisor also testified, explaining that the DNR investigates and potentially disciplines officers for being untruthful with law enforcement. But he stated that Officer Johnson was never investigated for lying. And the supervisor had no information that Officer Johnson "was untruthful regarding the incident." Finally, an investigator with the Hancock County Prosecutor's Office testified that no records reflected the office ever "considered filing charges" against Officer Johnson. Thus, all the uncontradicted testimony established that Officer Johnson did not commit the crime of false informing.

Accordingly, Leonard met her burden under the indemnification statute by producing evidence that Officer Johnson did not commit a criminal act. We now consider whether the State rebutted that showing.

## B. The State failed to rebut the evidence establishing a noncriminal act.

The State points to Leonard's federal false-arrest complaint and subsequent jury verdict as evidence that Officer Johnson committed the crime of false informing. We disagree, as the federal complaint and the jury verdict do not establish a prima facie case that Officer Johnson knowingly lied to law enforcement.

We acknowledge Leonard alleged in her federal complaint that Officer Johnson "falsely told [an investigator] that [Leonard] left the scene of the accident and did not return until the following day." But the complaint was admitted only to establish the allegations against Officer Johnson, not for the truth of those allegations. Because the complaint was admitted for this limited purpose, it cannot "constitute evidence of the facts alleged." *State v. Sanders*, 596 N.E.2d 225, 227 (Ind. 1992). As for the verdict, the jury could have found Officer Johnson liable if he recklessly made false statements that led to Leonard being charged. *See, e.g.*, *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011). But recklessness cannot impose criminal liability for false informing—there must be evidence that Officer Johnson acted knowingly. I.C. § 35-44.1-2-3(d)(1). Because the transcript from the federal trial was not offered into evidence, we cannot speculate as to whether the evidence presented to the jury matched the facts alleged in

the complaint or the standard on which the jury was instructed to find Officer Johnson liable.

For these reasons, the federal complaint and jury verdict do not establish that Officer Johnson knowingly lied to law enforcement—a requirement to make a prima facie showing for the crime of false informing. To conclude otherwise would have broad implications, precluding indemnification anytime a civil rights violation is framed as a crime that does not impose liability based on recklessness. But because the trial court made a factual finding inconsistent with its conclusion, we now determine whether that finding is clearly erroneous.

## II. Although the trial court's falsehood finding is clearly erroneous, the evidence supports the court's judgment.

In determining the State was required to indemnify Officer Johnson, the trial court necessarily concluded that his conduct was noncriminal. But the court seemingly determined that Officer Johnson committed false informing in finding that he "falsely maintained that Leonard had left the scene and returned the next day – not shortly after the accident, as had actually happened." We first note that the trial court made this finding in the context of determining only whether Officer Johnson was "acting within the scope of his employment." It is therefore unclear whether the court intended for this falsehood finding to address the indemnification statute's noncriminal requirement. But because the finding contradicts the court's judgment, we determine whether the finding is clearly erroneous. And our standard of review compels us to hold that it is.

A finding is clearly erroneous only if it is not supported by reasonable inferences from the evidence. *See, e.g.*, *Town of Linden v. Birge*, 204 N.E.3d 229, 234 (Ind. 2023). Despite this deferential standard, an inference is not reasonable if it requires speculation or conjecture. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 910 (Ind. 2001). And, in reviewing the falsehood finding, we must "look to the record only for inferences

favorable to the judgment." *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016).

The federal complaint and the jury verdict do not lead to a reasonable inference that Officer Johnson lied to law enforcement. As noted above, the complaint was admitted for a limited purpose and does not constitute evidence of the facts alleged. Thus, the trial court could not consider the complaint's allegations as proof that Officer Johnson lied to law enforcement. For similar reasons, the jury verdict does not support the court's finding. The transcript from the federal trial was not offered into evidence, and thus the court could not know whether the evidence presented to the federal jury matched the facts alleged in the complaint or how the jury was instructed. And the jury could have found Officer Johnson liable if he recklessly made false statements, which cannot support a finding that Officer Johnson knowingly lied. Presumably, that is why the State does not argue the federal jury verdict has any collateral estoppel effect in this case.

Simply put, speculation and conjecture are required to find that the jury relied on the complaint's allegation that Officer Johnson knowingly lied to an investigator in reaching its verdict. Thus, the trial court's inference that Officer Johnson lied is not reasonable—a conclusion bolstered by the fact that we must consider only inferences favorable to the judgment. As a result, the court's falsehood finding is clearly erroneous.

Setting that finding aside, the trial court made no findings related to the noncriminal requirement, and it did not explicitly conclude that Officer Johnson's actions were noncriminal. But the court implicitly determined that his actions were noncriminal because it concluded the State was required to pay the federal judgment. In reviewing that conclusion, we apply our general judgment standard and will affirm if the judgment is supported by the evidence. T.R. 52(D); *Steele-Giri*, 51 N.E.3d at 123–24.

For the reasons previously provided, the court's judgment is supported by the evidence. Leonard produced uncontradicted testimony that Officer Johnson's conduct was noncriminal. And the State did not provide evidence establishing a prima facie showing that Officer Johnson knowingly gave either "a false report of the commission of a crime" or

"false information to a law enforcement officer that relates to the commission of a crime." I.C. § 35-44.1-2-3(d)(1). Because the evidence establishes that Officer Johnson's conduct was noncriminal and because the State does not dispute the trial court's conclusion that Officer Johnson acted within the scope of his employment, the judgment is supported by the evidence.

## Conclusion

Leonard showed that Officer Johnson's conduct was noncriminal, and the State did not rebut that showing. Though the trial court's falsehood finding is clearly erroneous, the evidence ultimately supports the court's judgment. We therefore affirm.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT
Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Frances H. Barrow
Deputy Attorneys General

Angela Sanchez
Chief Counsel of Appeals

Benjamin M. Jones
Assistant Section Chief of Civil Appeals
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Jeffrey S. McQuary
Brown Tompkins Lory
Indianapolis, Indiana